[No. B225717. Second Dist., Div. Eight. Aug. 25, 2011.]

In re J.A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
J.A., Defendant and Appellant.

## COUNSEL

Bruce G. Finebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Eric E. Reynolds and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## GRIMES, J.—

### SUMMARY

The issue in this case is whether evidence was admissible under a rarely used—so far as published appellate cases reveal—statutory provision. Evidence Code section 1228 (hereafter section 1228) allows, as an exception to the hearsay rule in certain cases involving sex crimes against children, the admission of the child victim's out-of-court statements, but under specified conditions and solely "for the purpose of establishing the corpus delicti as a necessary antecedent to introduction of the defendant's confession." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1175 [119 Cal.Rptr.2d 903, 46 P.3d 372].) In

this delinquency proceeding, the juvenile court admitted the hearsay statements of the three-year-old victim and then found the lewd act allegations against the minor defendant to be true. The minor defendant contends the requirements of section 1228 were not met, and there was otherwise no evidence (except his own extrajudicial statements) to establish the corpus delicti, or body of the crime. We conclude the requirements of section 1228 were satisfied and affirm the juvenile court's order.

## FACTS AND LEGAL PRINCIPLES

On October 20, 2009, the Los Angeles County District Attorney filed a two-count petition alleging that the 15-year-old minor, J.A., came within the provisions of section 602 of the Welfare and Institutions Code, in that he committed the crime of lewd act upon a child, a felony (Pen. Code, § 288, subd. (c)(1); count 1), and the crime of attempted lewd act upon a child, a felony (Pen. Code, §§ 664, 288, subd. (c)(1); count 2).[1] J.A. denied the allegations. In January 2010, the juvenile court found the allegations true and sustained the petition. J.A. was released to his parents and the case was continued for disposition. After J.A. admitted an allegation in a later petition (filed in Mar. 2010) alleging a felony count of assault by means likely to produce great bodily injury, the juvenile court ordered that J.A. be placed home on probation and participate in a sexual offender treatment program.

J.A. filed a timely appeal. He contends the trial court erroneously admitted hearsay evidence under section 1228 and, without that evidence, the court's order sustaining the allegations rested only on his own out-of-court admissions, in violation of the corpus delicti rule. For the sake of clarity, we describe the legal principles upon which J.A. relies before relating the evidence adduced before the juvenile court.

First, the corpus delicti principle—requiring proof that a crime actually occurred—cannot be satisfied by exclusive reliance on a defendant's extrajudicial statements. (*People v. Alvarez, supra,* 27 Cal.4th at pp. 1164–1165.) "[E]very *conviction* must be supported by some proof of the corpus delicti *aside from* or *in addition to* such statements, and . . . the jury must be so instructed." (*Id.* at p. 1165.)

Second, section 1228 provides an exception to the hearsay rule in certain cases involving sex crimes against children (including the crimes charged in

---

[1] Penal Code section 288, subdivision (c)(1) applies to acts described in section 288, subdivision (a)—lewd or lascivious acts on a child under the age of 14 years—when the victim is a child of 14 or 15 years and the defendant is at least 10 years older than the child. The victim here was three years old, so subdivision (a) applies, not subdivision (c)(1). Neither party has raised any question about this discrepancy in the petition.

this case). Section 1228 "is directed at the corpus delicti rule." (*Creutz v. Superior Court* (1996) 49 Cal.App.4th 822, 826 [56 Cal.Rptr.2d 870] (*Creutz*).) The hearsay exception in section 1228 is "for the purpose of establishing the elements of the crime in order to admit as evidence the confession of a person accused" of those crimes. For this purpose, the court may admit the out-of-court statement of a child victim if several conditions are met.

■ The statement must be made by a victim under the age of 12. Its contents must have been included in a written report of a law enforcement official or county welfare department employee. (§ 1228, subd. (a).) The statement must describe the child as a victim of sexual abuse. (*Id.*, subd. (b).) It must be made prior to the defendant's confession. (*Id.*, subd. (c).) There must be no significant inconsistencies (or other circumstances that would render the child's statement unreliable) between the defendant's confession and the child's statement "concerning material facts establishing any element of the crime or the identification of the defendant . . . ." (*Id.*, subd. (d).) The child must be unavailable or refuse to testify. (*Id.*, subd. (e).) And the defendant's confession must have been memorialized "in a trustworthy fashion by a law enforcement official." (*Id.*, subd. (f).) If these conditions are met and the child's statement is found admissible, it is to be admitted "solely for the purpose of determining the admissibility of the confession of the defendant." (§ 1228.)

In this case, the victim was three years old, and J.A. is her 15-year-old uncle (the younger brother of the victim's mother). The victim did not testify at the hearing. She was called as a witness but began to cry and would not answer any questions, so the court deemed her unavailable as a witness. The mother testified for the prosecution, as did the police officer who questioned J.A. and prepared the report of J.A.'s statements. The victim's aunt (J.A.'s sister) testified for the defense. The mother's testimony was given subject to a continuing hearsay objection by the defense. (The juvenile court informed the parties it would hear all the evidence before making its admissibility determination.) Viewed in the light most favorable to the judgment, the evidence showed the following circumstances.

Various relatives were gathered for a family reunion at the home of the victim's grandparents in Pomona. The gathering was in the backyard most of the day, but in the late afternoon, most of those present went indoors. The victim, a very active child, was outdoors, as was J.A. They were outside for about 30 minutes.

The victim's aunt was bathing her children. The victim came running in from the backyard, saw that her cousin S. was taking a shower, and wanted to

take a shower also. She went straight to the bathroom, and the mother's sister asked the mother if she (the aunt) could bathe the victim. The mother said "yes," and after bathing the victim, the aunt wrapped her in a towel and took her to another room. The mother was walking into the room when she heard the victim tell her aunt that J.A. had touched her private part.

The mother then questioned her daughter. The victim told her mother in Spanish that J.A. had touched her "cola," by which she meant her vagina. The mother asked if J.A. had pulled her pants down, and the victim told the mother that he did. The mother asked, "Up to where?" and the victim told her "up to her buttocks." The victim told her mother "he sucked her part." The mother asked how J.A. did it, and the victim "stuck her tongue out, in and out her mouth." The mother "asked her what else had happened, and she [(the victim)] told me that she did not want to taste it because it tasted nasty." (The victim did not tell her mother to what she was referring.) Her mother asked her where this had happened, and the victim told her it happened in the backyard. The mother asked the victim to take her to where it happened, and the victim took her to the backyard. The mother asked the victim what J.A. was doing, and the victim said "[t]hat he was outside watering plants, and that's when it happened." The victim was very casual and was not crying while she was talking to her mother.

The mother began to cry. She confronted J.A. in the backyard after talking to her parents, who were questioning her about what had happened. (J.A. had gone to the store and then returned.) J.A. "immediately denied anything ̄ . . . ." The next time the victim saw J.A., several hours later that same evening, she told her mother "she did not like him no more." Her mother asked why, and the victim, who was sitting, told her "because he had sucked her private part, and she just closed her feet together and started, like, shaking," and "closed her eyes, squeezed them tight . . . ."

The mother's husband came to pick up the mother and the victim about 10:30 p.m. that evening. They drove to Downey, where they lived, and went to the police station, where they were told to go to the police station in Pomona. They arrived there about 1:00 a.m. and reported the incident. When defense counsel asked the mother why she did not call police right away, she answered, "I don't know. I still could not believe what she told me."

According to the mother, the victim does not make up stories, has never before claimed that someone had done anything similar to her, and has never been exposed to "porn or any sexual acts" of which the mother was aware.

The mother said she had never talked to the victim "about anything of this nature" and had never demonstrated the tongue action that the victim had shown her.[2]

Later in the night following the incident (at some time after 2:00 a.m.), Officer Ramon Espinoza interviewed J.A. in the living room area of his home. Before doing so, he talked to J.A.'s parents and told them why he was there. They agreed that Espinoza could enter and speak to J.A. inside the house. He then conducted an interview with J.A., first advising him of his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].)

Officer Espinoza testified about J.A.'s statements to him (also subject to a continuing defense objection "on hearsay grounds and corpus delicti"). Espinoza asked J.A. if he knew why the police were there speaking to him, and J.A. said that he did. He initially denied the accusations, but when Espinoza continued questioning him, J.A. told Espinoza what had happened. At first, he said he was in the backyard with the victim, and "there was a moment while—that she sat on his lap, and at which point he was just touching her leg." After refreshing his memory by checking his report, Espinoza's testimony continued:

"A Yes. I asked him more specifically if he had touched any other parts of her body. I believe he stated somewhat to the effect that he didn't want to. . . . I asked him what he was referring to. I asked him if he had touched her vagina, and he stated that he might have. I asked him what had occurred, and he stated that he had kissed her at first. I asked him where he had kissed her first. He told me that he had kissed her between I believe he stated the

---

[2] The victim's aunt testified for the defense. Her story differed from the mother's. She said that the grandparents and another sister were outside eating pomegranates during part of the time when J.A. was watering the grass. When the victim came in the house, she passed by the grandfather, and when she told the aunt what had happened, she said "my uncle" had touched her private part (and did not use J.A.'s name). (The aunt made this distinction because the victim always called J.A. by his name, not "uncle.") Then, the victim said that J.A. "pulled my hair because I was gonna get the water from the floor, but he was watering," and after that said "random things." The aunt also said the victim's mother was not in the room and did not hear what the victim said to the aunt until the victim repeated it to her mother. Under questioning by the court, the aunt said that her understanding of what the victim told her was that "my uncle sexually abused me"; that she (the aunt) was angry when the victim said that; and while the mother was questioning the victim, the aunt asked the victim, "Did [S.] [(the victim's five-year-old cousin)] do the same thing to you?" and the victim said, "Yes," though the aunt knew S. was too young to do such a thing. The aunt said that "I just remember the little girl answering yes to everything . . . ." The aunt also said on direct examination that the victim likes repeating television commercials, and when the aunt asked the victim in Spanish, "How are you doing," the victim would reply "sabrosa deliciosa," meaning "tasty, delicious, and precious," and "she spanks her butt while she's doing it, while she's saying that."

belly button and I think it was above the belly button, if I remember correctly. I asked him more specifically if he had touched—if he had kissed her in her vagina, and then he stated that just the once.

"Q And did he indicate why he did that?

"A He stated that he didn't want to, wasn't sure. [¶] . . . [¶]

"Q Other than saying he didn't know, he wasn't sure, did he make any other statements as to why he did this?

"A He stated he had pulled her pants down right below her buttocks area. [¶] . . . [¶]

"Q . . . So you indicated that besides kissing her vagina, he also pulled down her pants in order to get there, correct?

"A Correct.

"Q And did he indicate how far he pulled down her pants?

"A He did. He stated below her buttocks area.

"Q Okay. And did he indicate any other physical contact between his body and [the victim's] body?

"A He did.

"Q What was the description of that?

"A He stated that he was—he had to urinate. . . . He said he really had to use the restroom; therefore, he urinated in the backyard. [¶] He stated while his penis was out and he was urinating, the victim came up to him and asked him what was that. He stated that it was his, quotation, weewee. And she—he stated that while he was urinating and in the process of putting it away, his penis might have touched her face, more specifically, her chin or her cheek area. [¶] . . . [¶]

"Q Was there any other interaction or conversation between them?

"A . . . [¶] I asked him what else had occurred or transpired, and he stated he had asked her to kiss it, at which point he goes back to when he started putting it away, it might have touched her. [¶] . . . [¶]

"Q Okay. Did he indicate to you that—whether or not he knew that this was wrong?

"A Yes, he did.

"Q And how did he indicate that to you?

"A I don't remember exactly the quotation. Excuse me. But I believe he indicated that it was a violation. I asked him what he meant more specifically by a violation, and he stated that it was something like rape or attempted rape. [¶] I advised him if he knew that it was wrong and illegal, and he stated that he did understand that it was wrong and illegal."

Officer Espinoza also testified that, when he asked J.A. why he had done this, J.A. said, "I don't know. I'm not sure," and "I don't know. It happened so quick." Immediately after he said, "I don't know. I'm not sure," J.A. said "[s]omething to the effect that he got carried away."

Officer Espinoza testified that while he was questioning J.A., his (Espinoza's) voice and demeanor were calm; that he made no threats or implied threats; that J.A. "narrated to me and was specific about what was said"; and that J.A. never indicated he wanted his parents in the room.

After the testimony and arguments were concluded, the trial court ruled that the victim's statements would be admitted into evidence under the exception to the hearsay rule provided in section 1228. The court then sustained both counts of the petition and later ordered that J.A. be placed home on probation and participate in a sexual offender treatment program.[3]

## DISCUSSION

J.A. contends that his statements did not constitute a confession for purposes of section 1228, and that in any event there were inconsistencies

---

[3] The court also found the mother's testimony concerning what the victim told her was admissible under the "fresh complaint" doctrine. Under that doctrine, "evidence of the fact of, and the circumstances surrounding, an alleged victim's disclosure of the offense may be admitted in a criminal trial for nonhearsay purposes under generally applicable evidentiary principles, provided the evidence meets the ordinary standard of relevance." (*People v. Brown* (1994) 8 Cal.4th 746, 763 [35 Cal.Rptr.2d 407, 883 P.2d 949].) This is so "regardless whether the complaint is prompt or delayed." (*Id.* at p. 761.) But "only the fact that a complaint was made, and the circumstances surrounding its making, ordinarily are admissible; admission of evidence concerning details of the statements themselves, to prove the truth of the matter asserted, would violate the hearsay rule." (*Id.* at p. 760.) In light of our holding that the testimony was admissible under section 1228, we need not decide its admissibility under the fresh complaint doctrine.

between his and the victim's statements, making the mother's testimony inadmissible under section 1228. We disagree on both points, finding no error in the trial court's ruling that the victim's out-of-court statements were admissible under section 1228.

The *Creutz* case—the only appellate decision construing section 1228—describes the distinction between an admission and a confession. *Creutz* tells us that section 1228 "only allows the corpus delicti to be established through otherwise incompetent evidence if the defendant has made a full, complete confession" (*Creutz, supra,* 49 Cal.App.4th at p. 830), not merely "an ambiguous, equivocal, or incomplete self-inculpatory statement." (*Creutz,* at p. 830.) *Creutz* explained: "The word [confession] has a distinct meaning in criminal law. 'A confession is a declaration by a person that he is guilty of a crime. . . . It differs from an admission of an accused in that the confession is an express and complete acknowledgment of guilt of the crime, while an admission may be either express or implied, and is merely an acknowledgment of some fact which tends to prove guilt.' [Citations.] A confession must encompass all the elements of a crime [citation] and this includes the element of intent, where applicable." (*Creutz,* at pp. 828–829; see *id.* at p. 833 ["An admission cannot be converted into a confession by the addition of necessary facts supplied by the listener."].)

J.A. contends his statements to Officer Espinoza did not "encompass all the elements of [the] crime" (*Creutz, supra,* 49 Cal.App.4th at p. 829) because "there is no indication from his statements that he engaged in the acts with the requisite intent to arouse or satisfy sexual desires."[4] We cannot agree, and J.A.'s reliance on *Creutz* is misplaced. In *Creutz,* the three-year-old victim's statement concerning a vaginal touching otherwise satisfied section 1228 requirements, but the court found there was no "confession." (*Creutz,* at p. 828.) The defendant in *Creutz* told police that " ' "when [the victim] was given a bath one time . . . I do remember getting awful close to her in that area, but, again, I don't, never, I never thought I was doing anything wrong." ' " (*Id.* at p. 831.) And to the next question, " ' "how long do you think you rubbed her with your hands?," ' " the defendant replied, " ' "I don't know how long. I don't think it took very long. I mean, it wasn't, I wasn't actually trying to fondle her . . . if that's the correct word . . . If that's correct terminology." ' " (*Id.* at p. 832.) The court found it "apparent" that the defendant's statements did not constitute a confession, because he admitted only that he might have touched the child in the vaginal area while bathing

---

[4] Penal Code section 288, subdivision (a) states: "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

her and "certainly did not admit any lewd intent in doing so," and indeed "expressly disclaimed evil intent when he stated that 'I never thought I was doing anything wrong' and 'I wasn't actually trying to fondle her.' " (*Ibid.*)

By contrast, in this case J.A. told Officer Espinoza that he had pulled the victim's pants down below her buttocks area; that he had kissed the victim in her vagina, "just the once"; that his penis might have touched her chin or her cheek area; that he had asked her to kiss his penis; that it was a violation, and by that he meant it was something like rape or attempted rape; that he understood that it was wrong and illegal; that he was not sure why he had done it; and that "he got carried away." We have no difficulty concluding that these statements, as a matter of law, "encompass all the elements of [the] crime" (*Creutz, supra,* 49 Cal.App.4th at p. 829), including "the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person" (Pen. Code, § 288, subd. (a)). Unlike the *Creutz* case, where the defendant's statement was "not merely silent on the issue of wrongful intent; he denied such intent" (*Creutz,* at p. 833), J.A.'s statements were an admission of lewd intent. Consequently, his statements constituted a confession within the meaning of Evidence Code section 1228.

J.A. argues that, even if his statement was a confession, there were "significant inconsistencies" between his statement and the victim's statement, rendering the victim's statement unreliable under section 1228 (which requires there to be "no circumstances, such as significant inconsistencies between the confession and the [child's] statement concerning material facts establishing any element of the crime or the identification of the defendant, that would render the statement unreliable"). (§ 1228, subd. (d).) Again we disagree.

There were no significant inconsistencies between J.A.'s confession and the mother's recounting of the victim's statements concerning the material facts. J.A. confessed to kissing the victim's vagina, "just the once." The victim said that J.A. had pulled her pants down and touched her vagina, "suck[ing] her part" (which she demonstrated). J.A. said he had asked the victim to kiss his penis and his penis might have touched her chin or her cheek area. The victim said "she did not want to taste it because it tasted nasty." The two accounts are entirely consistent.

Conceding that "certain elements" of the statements of the victim and J.A. were "somewhat consistent," J.A. points instead to the aunt's testimony about other statements the victim made (see fn. 2, *ante*): that J.A. pulled her hair, and that when the aunt asked if her cousin S. did the same thing to her that J.A. did, the victim said "yes." J.A. also asserts the victim's statements were unreliable because she was calm when she initially recounted the event;

because the aunt (in contrast to the mother) said that the victim would respond, when asked in Spanish "how are you doing," that she was "sabrosa deliciosa" (tasty, delicious, and precious) while "spank[ing] her butt." These "questionable inferences regarding [the victim's] tendency to tell stories and her degree of self-awareness as to sexual behaviors," J.A. contends, render the victim's statement "largely inconsistent with [J.A.'s] and, therefore, generally unreliable." This argument is without merit. The testimony J.A. recites has nothing to do with "material facts establishing any element of the crime." (§ 1228, subd. (d).) And, as for the general reliability of the victim's statements, it was for the judge—who may well not have believed the aunt's testimony—to decide whether these were "circumstances . . . that would render the [child's] statement unreliable." (*Ibid.*) The court clearly did not abuse its discretion in deciding they were not.

█ In sum, there was no error in the juvenile court's admission of the victim's out-of-court statements "solely for the purpose of determining the admissibility of the confession of the defendant." (§ 1228.)

### DISPOSITION

The judgment is affirmed.

Rubin, Acting P. J., and Flier, J., concurred.